**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND, | ) ) ) ) ) |  |
| Plaintiffs, | ) | Civil Action No. 24-cv-02687-LKG |
| v. | ) ) | Dated:  July 20, 2026 |
| MVC ELECTRICAL, LLC, | ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM OPINION**

### I.   INTRODUCTION

In this civil action, the Plaintiffs, the Trustees of the National Electrical Benefit Fund ("the Trustees"), brings claims against the Defendant, MVC Electrical, LLC ("MVC") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145.  ECF No. 1 at ¶¶ 1–2.  On September 23, 2025, the Trustees filed a motion for default judgment.  ECF No. 14.  MVC has not responded to the motion.  *See* Dkt.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2025).  For the reasons that follow, the Court: (1) **GRANTS** the Plaintiffs' motion for default judgment (ECF No. 14), pursuant to Fed. R. Civ. P. 55(b)(2); (2) **ENTERS JUDGMENT** in favor of the Plaintiffs against the Defendant; and (3) **AWARDS** the Plaintiffs: (a) delinquent contributions in the amount of **$12,617.56**; (b) pre-judgment interest in the amount of **$3,395.66**; (c) liquidated damages in the amount of **$2,523.51**; (d) reasonable attorney's fees in the amount of **$675.00**; and (e) reasonable costs in the amount of **$761.50**.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

A.    **Factual Background**

In this civil action, the Trustees bring an ERISA claim against MVC, arising from certain delinquent contributions under an ERISA plan. *See generally* ECF No. 1. In the complaint, the Trustees allege that MVC is bound by a collective bargaining agreement to make monetary contributions to the National Electrical Benefit Fund, and that MVC did not make the requisite contributions. *Id.* at ¶¶ 5–8. As relief, the Trustees seek to recover, among other things, $12,617.56 in delinquent fees, $3,395.66 in interest, $2,523.50 in liquidated damages, $675.00 in attorney's fees and $761.50 in costs. *See id.* at Prayer for Relief; ECF Nos. 14-1 at ¶ 10 and 14-4 at ¶ 11.

The Parties

Plaintiffs the Trustees of the National Electrical Benefit Fund are the Maryland trustees of a multiemployer pension benefit plan known as the National Electrical Benefit Fund ("NEBF"). ECF No. 1 at ¶¶ 1 and 4.

Defendant MVC Electrical, LLC is Hawaii corporation that has its principal place of business located in Honolulu, Hawaii. *Id.* at ¶ 5.

Case Background

In this civil action, the Trustees bring ERISA claims against MVC, arising from MVC's alleged failure to make certain payments to NEBF. *Id.* at ¶¶ 6–17. The Trustees assert that MVC failed to make contributions to a multiemployer pension plan in accordance with its obligation under a collective bargaining agreement under ERISA. *Id.* at ¶¶ 9 and 14. As relief, the Trustees seek to recover delinquent contributions, interest, liquidated damages, reasonable attorney's fees and costs. *Id*. at Prayer for Relief.

The Trustees commenced this case on September 17, 2024 (*id.*), and they properly served MVC with a copy of the complaint and summons on October 30, 2024. ECF No. 8 at 1. After MVC failed to answer, or otherwise respond to, the complaint, the Trustees filed a motion for Clerk's entry of default on January 28, 2025. ECF No. 9 at 1. The Clerk of the Court granted this motion and entered an order of default on September 5, 2025. ECF No. 10 at 1.

---

[1] The facts recited in this memorandum opinion are taken from the complaint, the summons, the Plaintiffs' motion for Clerk's entry of default, the Clerk of the Court's entry of default and the Plaintiffs' motion for default judgment. ECF Nos. 1, 8, 9, 10 and 14.

As background, the NEBF is a multiemployer employee pension benefit plan, that has been established pursuant to an agreement between the International Brotherhood of Electrical Workers and the National Electrical Contractors Association. ECF No. 1 at ¶ 4. The Trustees may be required to provide benefits to participants employed by MVC upon the plan-participants' retirement, based on their years of credited service. *Id.* at ¶ 13.

In the complaint, the Trustees allege that MVC is a signatory to a collective bargaining agreement that requires that MVC make monetary contributions to the NEBF on behalf of its employees. *Id.* at ¶ 5–7. In this regard, the Trustees allege that the collective bargaining agreement authorizes the Trustees to file suit to recover delinquent contributions, interest at a rate of 10% per annum, liquidated damages equal to 20% of the delinquency, attorney's fees and costs. *Id.* at ¶ 17.

Lastly, the Trustees allege that MVC failed to contribute $12,617.56 to the NEBF, during the period November, 2022 to December, 2023, as required under the collective bargaining agreement. *Id.* at ¶ 9. And so, the Trustees seek to recover these delinquent contributions in the amount of $12,617.56, interest in the amount of $3,395.66 and liquidated damages in the amount of $2,523.51. ECF No. 14-4 at 3.

The Evidence Before The Court

To support their claim, the Trustees have submitted the sworn affidavit of Darrin E. Golden, the executive-secretary-treasurer of the NEBF. ECF No. 14-4. In this affidavit, Mr. Golden represents to the Court that MVC is a signatory to a certain Inside Agreement that obligates MVC to make contributions to the NEBF. ECF No. 14-4 at ¶¶ 3–6. Mr. Golden also represents to the Court that the amount of MVC's delinquent payment in this case is $12,617.56. *Id.* at ¶ 8.

In this regard, the Trustees have also provided the Court with NEBF's delinquency report for MVC, which shows that MVC owed contributions during the period November 2022 to December 2023, in the amount of $12,617.56. ECF No. 14-8 at 1. The delinquency report also shows that the interest on these delinquent payments, up to and until September 2025, is $3,395.66, and that the liquidated damages for these delinquent payments is $2,523.51. *Id.*

In addition, the Trustees have also provided the Court with copies of the following four documents that address MVC's obligation to make the delinquent payments: (1) a letter of assent; (2) the inside agreement; (3) the Restated Employees Benefit Agreement and Trust ("REBAT"); and (4) a delinquency report. ECF Nos. 14-5, 14-6, 14-7 and 14-8.

The letter of assent, which is dated February 19, 2012, addresses MVC's assent to comply with the collective bargaining agreement at issue and this document bears the signature of MVC's member, Victor S. Robles.  ECF No. 14-5 at 1.  The letter of assent provides, in relevant part, that:

> In signing this letter of assent, the undersigned firm does hereby authorize . . . [a] collective bargaining representative for all matters contained in . . . the current and any subsequent inside/outside labor agreement . . . In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements.

*Id.* (emphasis omitted).

Second, the inside agreement addresses MVC's obligation to make the payments to NEBF that are at issue in this case, and that agreement provides, in relevant part, that:  the "employer will forward monthly to the NEBF . . .  an amount equal to 3% of the gross monthly labor payroll paid to . . . the NEBF . . . [and t]he individual Employer hereby accepts, and agrees to be bound by, the [REBAT]."  ECF No. 14-6 at 48.

Third, the REBAT addresses the Trustees' authority to assess and receive damages, in the event that an employer fails to make the required payments to NEBF, and that agreement provides that:

> In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered: . . . to assess and receive from such Covered Employer as liquidated damages an amount up to . . . 20%[] of the amount found to be delinquent, in that the failure of the Covered Employer to make the required payment of contributions imposes additional burden and expense upon the Trustees in the collection thereof, in the administration of the NEBF, including but not limited to the communication with said Covered Employees, all of which are difficult of accurate ascertainment; [and] to assess and receive from such Covered Employer the lost interest from the delinquent amounts, to be calculated at a . . . 10%[] annual rate compounded monthly throughout the period of the delinquency . . . .

ECF No. 14-7 at 7.

Lastly, the NEBF's delinquency report for MVC shows the amount of contributions owed by MVC, during the period November 2022 to December 2023 ($12,617.56).  ECF No. 14-8.  The NEBF's delinquency report for MVC also calculates the interest owed on the delinquent payments, up to and until September 2025 ($3,395.66), and calculates the liquidated damages ($2,523.51).  *Id.*

4

Attorney's Fees

Lastly, the Trustees seek to recover their reasonable attorney's fees, in the amount of $675.00, and costs in the amount of $761.50.00, in connection with this litigation, pursuant to Section 1132(g)(2) of ERISA.  ECF No. 1 at Prayer for Relief.  To support this claim, the Trustees provide an affidavit from their attorney, Peter J. Tkach, Esq., in which Mr. Tkach represents to the Court that: (1) his law firm, Potts-Dupre, Hawkins & Kramer, Chtd., has been the Plaintiffs' counsel since 1990; (2) he is an associate of the firm and has been licensed to practice since 2022; (3) he billed 1.5 hours for drafting and revising the Trustees' pleadings in this case and 1.5 hours for drafting and revising the motion for default judgment.  ECF No. 14-1 at 2.

Mr. Tkach also represents to the Court that the Trustees have accrued $761.50 in costs, consisting of a $405.00 filing fee and $356.50 for service of process.  *Id.* at 3.  To support these costs the Trustees have also provided the Court with a copy of the invoice for service of process in the amount of $356.50.  ECF No. 14-3.

### B.    Relevant Procedural Background

The Trustees commenced this civil action on September 17, 2024.  ECF No. 1.  On January 28, 2025, the Trustees filed a motion for Clerk's entry of default (ECF No. 9), which the Clerk of the Court granted on September 5, 2025.  ECF No. 10.  On September 23, 2025, the Trustees filed the pending motion for default judgment, pursuant to Fed. R. Civ. P. 55(b)(2).  ECF No. 14.

## III.  LEGAL STANDARD

### A.    Fed. R. Civ. P. 55

Federal Rule of Civil Procedure 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party."  *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant default judgment, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see*

5

*also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context.  *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). And so, where a complaint avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment.  *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g.*, *Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

**B.    ERISA**

The Employee Retirement Income Security Act governs the minimum standards for most voluntarily established retirement and health plans in private industry.  *See* 29 U.S.C. §§ 1001–1461.  Specifically, ERISA applies if there is: "(1) a plan, fund or program; (2) established or maintained; (3) by an employer, employee organization, or both; (4) for the purpose of providing a benefit; (5) to employees or their beneficiaries." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 417 (4th Cir. 1993).  In this regard, ERISA requires employers under a multiemployer plan to make contributions to the plan.  29 U.S.C. § 1145.  ERISA also provides that "the [C]ourt shall award" to the multiemployer pension plan, in an action by its fiduciary, the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions [determined by using the rate provided under the plan],
> (C) an amount equal to the greater of—
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

**C.    Attorney's Fees**

The United States Court of Appeals for the Fourth Circuit has recognized "two main methods for calculating the reasonableness of attorney's fees—the lodestar method and the percentage-of-recovery method," and a "district court may choose the method it deems

6

appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022).  The lodestar amount is "a reasonable hourly rate multiplied by hours reasonably expended." *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (internal quotation omitted).  In this regard, the Court has held that an hourly rate is reasonable when it is "in line with 'prevailing market rates in the relevant community' for the type of work for which [the attorney] seeks an award." *Aldmyr Sys., Inc. v. Friedman*, 215 F. Supp. 3d 440, 468 (D. Md. 2016) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)).  The Court uses the Fitzpatrick Matrix as a guide to determine the reasonableness of requested attorney's fees.  L.R. App. B. (D. Md. 2025).

Lastly, a prevailing party may also seek to recover costs, and such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988).  And so, this Court has held that the cost of service of process and filing fees are reimbursable. *Butler v. PP&G, Inc.*, No. 20-3084, 2023 WL 6517593, at *4 (D. Md. Oct. 5, 2023).

## IV.   ANALYSIS

The Trustees have moved for a default judgment on their ERISA claim against MVC, pursuant to Fed. R. Civ. P. 55.  In their motion, the Trustees argue that the well pleaded factual allegations in the complaint show that MVC failed to make certain payments required under the inside agreement and REBAT, and that they are entitled to recover these payments, plus interest and liquidated damages from MVC. *See* ECF No. 14-4 at 2–3.  The Trustees also argue that the Court should enter a default judgment against MVC in these amounts, because MVC failed to answer, or otherwise respond to, the complaint, or to defend this action.  ECF No. 14 at 2.  Lastly, the Trustees argue that they are entitled to recover their reasonable attorney's fees, in the amount of $675.00, and costs, in the amount of $761.50, under ERISA.  ECF No. 14-1 at 3.  And so, the Trustees request that the Court grant their motion for default judgment and award them: (1) delinquent contributions in the amount of $12,617.56; (2) pre-judgment interest in the amount of $3,395.66; (3) liquidated damages in the amount of $2,523.51; (4) reasonable attorney's fees in the amount of $675.00; and (5) reasonable costs in the amount of $761.50.  ECF No. 14 at 2; 14-4 at 3.

For the reasons that follow, a careful reading of the complaint shows that the Trustees have alleged facts to show that MVC violated ERISA, by failing to make the contribution payments required under the inside agreement and REBAT and that the Trustees may recover these is delinquent payments, plus interest and liquidated damages from MVC.  The Trustees

7

have also shown that the attorney's fees and costs that they seek to recover in this case are reasonable. And so, the Court: (1) GRANTS the Plaintiffs' motion for Judgment by Default (ECF No. 14), pursuant to Fed. R. Civ. P. 55(b)(2); (2) ENTERS JUDGMENT in favor of the Plaintiffs against the Defendant; and (3) AWARDS the Plaintiffs: (a) delinquent contributions in the amount of $12,617.56; (b) pre-judgment interest in the amount of $3,395.66; (c) liquidated damages in the amount of $2,523.51; (d) reasonable attorney's fees in the amount of $675.00; and (e) reasonable costs in the amount of $761.50.

### A.     The Trustees Have Shown That They State A Claim Under ERISA

As an initial matter, the Court is satisfied that the Trustees have advanced well-pleaded factual allegations to bring a claim under ERISA. ERISA applies if there is: "(1) a plan, fund or program; (2) established or maintained; (3) by an employer, employee organization, or both; (4) for the purpose of providing a benefit; (5) to employees or their beneficiaries." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 417 (4th Cir. 1993). ERISA also requires employers under a multiemployer plan to make contributions to the plan. 29 U.S.C. § 1145. In this case, the Trustees allege factual allegations in the complaint to show that ERISA applies to this case. Notably, the Trustees allege that the NEBF is a fund that is established by the International Brotherhood of Electrical Workers and the National Electrical Contractors Association. ECF No. 1 a ¶ 4. The Trustees also allege that NEBF is a pension benefit plan and that this pension benefit plan is for the benefit of MVC's employees. *Id.* at ¶¶ 4 and 13. And so, taken as true, these factual allegations show that ERISA applies to this case.

### B.     The Trustees Have Shown That They Are Entitled To Recover The Delinquent Payments, Interest And Liquidated Damages

The Trustees also allege facts that, taken as true, show that MVC failed to make the contributions required under the inside agreement. Specifically, the Trustees allege that: (1) MVC is a signatory to a collective bargaining agreement that required them to make monetary contributions to the NEBF on behalf of its employees; (2) based on the reports that MVC prepared and submitted to the NEBF, MVC did not pay the NEBF during the period November 2022, to December 2023; and (3) the NEBF demanded the contribution payments, but MVC did not comply. *Id.* at ¶¶ 6–10.

The February 19, 2012, letter of assent, signed on behalf of MVC, corroborates the Trustee's claim that MVC is obligated to make the contribution payments because this agreement provides, in relevant part, that "the undersigned firm agrees to comply with, and be bound by, all provisions contained in" "the current and any subsequent inside[] labor

agreement . . . ." ECF No. 14-5. The inside labor agreement also provides that "[MVC] will forward monthly to the NEBF . . . an amount equal to 3% of the gross monthly labor payroll paid to . . . the NEBF." ECF No. 14-6 at 48. In addition, the NEBF delinquency report shows MVC's owed contributions to the NEBF, for the period November 2022, to December 2023, totaling $12,617,56. ECF No. 14-8. And so, pursuant to ERISA, the Court shall award to the multiemployer pension plan, in an action by its fiduciary, among other things, "the unpaid contributions . . . ." 29 U.S.C. § 1132(g)(2).

The Trustees also allege facts that, taken as true, show that they can recover interest from MVC on the delinquent payments. Specifically, the Trustees allege that: (1) MVC did not pay the NEBF during the period November 2022, to December 2023 and (2) the REBAT authorizes the Trustees to recover 10% per *annum* interest on the delinquent payments. ECF No. 1 at ¶¶ 6 and 17. The Trustees brought this civil action on September 17, 2024. ECF No. 1. The NEBF delinquency report also shows owed contributions that MVC owes for each month during the period, November 2022, to December 2023, and calculates interest, compounding monthly. *See* ECF No. 14-8.

In addition, the inside agreement provides in relevant part, that "[t]he individual [e]mployer hereby accepts, and agrees to be bound by, the [REBAT,]" and the REBAT provides, in relevant part, that:

> In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered: . . . to assess and receive from such Covered Employer the lost interest from the delinquent amounts, to be calculated at a . . . 10%[] annual rate compounded monthly throughout the period of the delinquency . . . .

ECF No. 14-7 at 5. Pursuant to ERISA, the Court shall award to the multiemployer pension plan, in an action by its fiduciary, among other things, "interest on the unpaid contributions . . . ." 29 U.S.C. § 1132(g)(2). Given this, the Trustees have also shown that they may recover interest in the amount of $3,395.66 from MVC.

Lastly, the evidence before the Court also shows that the Trustees are entitled to recover liquidated damages in the amount of $2,523.51 from MVC. Specifically, the Trustees allege that (1) MVC did not pay the NEBF during the period November 2022, to December 2023 and (2) the REBAT authorizes the Trustees to recover liquidated damages equal to 20% of the delinquent contributions. ECF No. 1 at ¶¶ 6 and 17. The NEBF delinquency report also shows the amount of contributions that MVC owed to NEBF during the period, November 2022, to December 2023, which is $12,617.56. Here, the REBAT

9

provides that: "In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered: . . . to assess and receive from such Covered Employer as liquidated damages an amount up to . . . 20%[] of the amount found to be delinquent . . . ." ECF No. 14-7 at 5. Pursuant to ERISA, the Court shall award to the multiemployer pension plan, in an action by its fiduciary, among other things, "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 higher percentage as may be permitted under Federal or State law) of the amount determined by the court . . . ." 29 U.S.C. § 1132(g)(2).

Given this, the trustees have also shown that they may recover liquidated damages in the amount of $2,523.51 from MVC. Given this, the Court is satisfied that the Trustees have provided sufficient evidence of damages and have correctly calculated delinquent payments, interest and liquidated damages.[2] And so, the Court AWARDS the Plaintiffs: (a) delinquent contributions in the amount of $12,617.56; (b) pre-judgment interest in the amount of $3,395.66; and (c) liquidated damages in the amount of $2,523.51.

## C.      The Trustees Are Entitled To Recover The Requested Attorney's Fees And Costs

The Trustees have also shown that they may recover the attorney's fees and costs that they seek in this ERISA matter. ERISA allows for the fiduciary of a multiemployer pension plan to recover attorney's fees. 29 U.S.C. § 1132(g)(2). The Court may award attorney's fees by way of the lodestar method, "a reasonable hourly rate multiplied by hours reasonably expended." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022); *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (internal quotation omitted). An hourly rate is reasonable when it is "in line with 'prevailing market rates in the relevant community' for the type of work for which [the attorney] seeks an award." *Aldmyr Sys., Inc. v. Friedman*, 215 F. Supp. 3d 440, 468 (D. Md. 2016) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402

---

[2] The Court observes that the Trustees seek more damages in interest in their motion for default judgment than in the complaint that has accrued in the interim. *See* ECF Nos. 1 at Prayer for Relief and 14-8. Fed. R. Civ. P. 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleading." But, when "a complaint demands a specific amount of damages *and* unspecified additional amounts[] so long as a defendant has notice that additional unspecified damages may be awarded . . . general allegations in the complaint may suffice to support default judgment in an amount that is proven . . . ." *Trs. of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. 15-521, 2016 WL 297427, at *5 (D. Md. Jan. 21, 2016) (emphasis in original). In their complaint, the Trustees seek "an award of interest accruing from now until contributions are paid in full . . . ." ECF No. 1 at prayer for relief. And so, the Court is satisfied that the Trustees demand unspecified additional damages as it relates to interest.

(4th Cir. 1987)). This Court also uses the Fitzpatrick Matrix as a guide to determine the reasonableness of requested attorney's fees. L.R. App. B. (D. Md. 2025).

The Trustees seek to recover attorney's fees in the amount of $675.00 for three hours of attorney work performed on this case. ECF Nos. 14-1 at 2. In this regard, Mr. Tkach states in his affidavit that he billed a total of three hours on this case preparing the complaint and the Trustees' motion for default judgment. *Id.* Given the nature of this case, the Court is satisfied that these hours are reasonable.

The Court is also satisfied that Mr. Tkach's hourly rate is reasonable. Mr. Tkach states that his hourly rate in this case is $225.00 per hour. *Id.* This rate is well below the Fitzpatrick Matrix for an attorney with three or four years experience in 2024 and 2025. *See* L.R. App. B. (D. Md. 2025). Given this, Court is also satisfied that the hourly rate billed in this case is reasonable.

As a final matter, the Court is satisfied that the Trustees' requested costs are reasonable. It is well-established that a prevailing party may recover costs for "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Here, the Trustees seek to recover costs in the amount of $405.00 for the Court's filing fee and $356.50 for service-of-process expenses incurred in this litigation. *Id.* To support this request, the Trustees have provided the Court with a copy of the invoice for service of process in the amount of $356.50. And so, the Court is satisfied that the requested costs were incurred in this case and are reasonable.

### D.　　A Default Judgment Is Warranted

Lastly, the Trustees have shown that they are entitled to a default judgment against MVC in this case. The litigation history for this case shows that MVC has repeatedly failed to plead, or otherwise defend itself in this case. Notably, after the Trustees properly served MVC with a copy of the summons and complaint on October 30, MVC did not answer, or otherwise respond to the complaint. ECF No. 3; *See* Dkt. And so, the Clerk of the Court entered an Order of Default against MVC on September 5, 2025. ECF No. 10.

MVC also did not respond to the Order of Default. *See* ECF No. 11. And so, the Trustees filed the pending motion for default judgment on September 23, 2025. ECF No. 14. To date, MVC has not responded to this motion, despite the passage of many months. *See* Dkt.

11

Given this, the Court is satisfied that the Trustees are entitled to a default judgment against MVC under Rule 55(b). And so, the Court GRANTS the Trustees' motion for default judgment. Fed. R Civ. P. 55.

## V.    CONCLUSION

In light of the foregoing, the Court:

(1) **GRANTS** the Plaintiffs' motion for default judgment (ECF No. 14), pursuant to Fed. R. Civ. P. 55(b)(2);

(2) **ENTERS JUDGMENT** in favor of the Plaintiffs against the Defendant; and

(3) **AWARDS** the Plaintiffs: (a) delinquent contributions in the amount of **$12,617.56**; (b) pre-judgment interest in the amount of **$3,395.66**; (c) liquidated damages in the amount of **$2,523.51**; (d) reasonable attorney's fees in the amount of **$675.00**; and (e) reasonable costs in the amount of **$761.50**.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge